**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff/Respondent, § | | |
| § | | |
| V. § | | CR. No. C-08-122 |
| § | | C.A. No. C-09-251 |
| HECTOR AGUIRRE-PINEDA , § | | |
| Defendant/Movant. § | | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
<u>ORDER DENYING CERTIFICATE OF APPEALABILITY</u>**

Pending before the Court is Movant Hector Aguirre-Pineda's ("Aguirre-Pineda") motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. (D.E. 47.)[1] The government has filed a response in opposition (D.E. 49.) Aguirre-Pineda has filed a reply (D.E. 50), which the Court has also considered. For the reasons set forth below, the Court DENIES Aguirre-Pineda's motion. Additionally, the Court DENIES Aguirre-Pineda a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

**II. FACTS AND PROCEEDINGS**

**A.    Factual Background of the Offense**

On February 20, 2008, Border Patrol agents encountered Aguirre-Pineda in Benavides, Texas. A trooper with the Texas Department of Public Safety had observed two suspicious persons walk into a local convenience store. The trooper interviewed the subjects and found that one of them, Aguirre-Pineda, was illegally in the United States. The other subject was determined to be an undocumented alien and was also arrested. Border Patrol agents interviewed Aguirre-Pineda, and

---

[1] Dockets entries refer to the criminal case, C-08-cr-122.

he stated that he illegally entered the United States by wading across the Rio Grande River on January 4, 2008, through Roma, Texas. (PSR at ¶ 4.)

Records checks revealed that Aguirre-Pineda he had been deported a number of times after being found illegally in the United States. One of these times he was deported on June 15, 1998, subsequent to two felony convictions and a misdemeanor conviction. He was again deported on December 8, 1999 subsequent to a felony alien trafficking conviction, on March 2, 2001 subsequent to a felony conviction, and on April 12, 2005, subsequent to a felony conviction. He was also deported on October 26, 2001 and January 10, 2003, both times subsequent to no additional convictions. (PSR at ¶ 4.)

**B.     Criminal Proceedings**

On March 13, 2008, Aguirre-Pineda was charged in a single-count indictment with illegal reentry after deportation, in violation of 8 U.S.C. §§ 1326(a) and 1326(b). (D.E. 9.) He pleaded guilty on April 15, 2008. (See D.E. 15, 17.) There was no written plea agreement. (D.E. 17.)

The PSR scored Aguirre-Pineda at a base offense level of 8, but increased the offense level by 16 levels pursuant to § 2L1.2(b)(1)(A),[2] due to his felony conviction for an alien trafficking offense, in Case No. 1:98-cr-644(2), in the Brownsville Division of this Court. (PSR at ¶¶ 10-11, 24; see also D.E. 22 (Sealed Addendum to PSR containing judgment in the prior criminal case).) He was given a three-level downward departure for acceptance of responsibility, resulting in a total offense level of 21. (PSR at ¶¶ 16-19.) When coupled with his criminal history category of V, his resulting advisory guideline range was 70 to 87 months. (PSR at ¶¶ 21-27, 43.)

---

[2] The PSR utilized the 2007 edition of the United States Sentencing Guidelines. (PSR at ¶ 9). All citations herein to the guidelines are to that edition.

Aguirre-Pineda, by and through his appointed counsel, Armando Cavada, filed written objections to the PSR. (D.E. 18.) His primary objection was to the 16-level enhancement for the prior conviction. Counsel raised a number of grounds for the objection, including that it overstated his criminal history and overstated his offense level. Counsel further noted that when Aguirre-Pineda was previously sentenced for illegal re-entry after the 1998 conviction, the sentencing court reduced the offense level because the sixteen-level enhancement resulted in an over-representation of defendant's past criminal conduct. (D.E. 18 at 1-2.)

The United States responded to the objections, arguing that the sixteen-level enhancement was entirely proper and that Aguirre-Pineda's offense level and criminal history category were correctly calculated. (D.E. 24 at 1-2.) The United States also disagreed with counsel's suggestion that Aguirre-Pineda should receive a downward departure. In particular, it noted that he had been "deported on six separate occasions" and that his previous two sentences for illegal re-entry offenses (both of which resulted in downward departures) did not deter his criminal conduct. (D.E. 24 at 2.)

On July 1, 2008, the case was called for sentencing. (See generally, D.E. 37, Sentencing Transcript ("S. Tr.").) The Court heard counsel's objections to the sixteen-level enhancement, but overruled the objection. (S. Tr. at 4-5, 10.) The Court adopted the PSR's determination that the advisory guideline range was 70 to 87 months, and sentenced Aguirre-Pineda to 72 months in the custody of the Bureau of Prisons, to be followed by a three-year term of supervised release. (S. Tr. at 10-11; D.E. 26, 27.) In determining where within the guideline range to imposed sentence, the Court explained that it did not think Aguirre-Pineda was truthful and that he had lied several times to previous judges about his name. (S. Tr. at 11.) Final judgment against him was entered on July 3, 2008. (D.E. 27.)

Aguirre-Pineda timely appealed. (D.E. 29.) On appeal, he argued that the 16-level adjustment to his offense level violated the Ex Post Facto Clause because that same 1999 conviction resulted in a smaller adjustment to his offense level in a previous case. (D.E. 45 at 1.) In a per curiam opinion issued April 1, 2009, the Fifth Circuit rejected his argument, explaining:

> Any change in how a prior conviction is used to establish an offense level during the time in between one conviction and another thus would not violate the Ex Post Facto Clause.

(D.E. 45 at 2 (citation omitted).) The Fifth Circuit affirmed. (D.E. 44, 45.)

On September 21, 2009, the Clerk received Aguirre-Pineda's § 2255 motion. (D.E. 47.) It is timely.

### III. MOVANT'S ALLEGATIONS

In his motion, Aguirre-Pineda lists three grounds for relief, although none of them entitle him to relief. In his first ground, he argues that the Court erred in applying the 16-level enhancement to his offense level. Specifically, he contends that the enhancement was improper because: (1) the sentence was merely a felony and not an aggravated felony; and (2) the prior offense was not an alien smuggling offense, only an alien harboring offense. As part of this ground, he also points out that he was sentenced after the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005). and thus that the guidelines were advisory and that the court should have considered certain mitigating circumstances. (D.E. 47 at 4.)

In his second ground for relief, he argues that his status as a deportable alien is a mitigating factor that this Court should have considered at sentencing pursuant to Booker. In particular, he argues that his status as a deportable alien means that he would be denied the benefit of certain programs and placements within the Bureau of Prisons, such as placement in a half-way house or

community confinement, and the denial of any one-year reduction in his sentence for participation in the BOP's residential drug treatment program. (D.E. 47 at 5.) He argues that this denial of benefits is not only a mitigating circumstance that should have resulted in a lesser sentence, but that it also violates the principle of equal protection. (D.E. 47 at 5.)

In his third and final ground for relief, Aguirre-Pineda argues that he was denied effective assistance of counsel because his counsel failed to make the arguments in his first and second grounds for relief. He also makes a general claim that counsel's efforts showed a "lack of diligence," that counsel failed to investigate all the facts in his case, and that his counsel violated unspecified standards of the American Bar Association ("ABA"). (D.E. 47 at 7.)

For the reasons discussed herein, the Court concludes that Aguirre-Pineda is not entitled to relief.

## IV.  DISCUSSION

**A.     28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

**B.     Claims That Should Have Been Raised on Appeal and Were Not Are Procedurally Barred**

The United States correctly argues that, to the extent Aguirre-Pineda is raising claims that the Court erred at sentencing, he has defaulted those claims by failing to raise them on appeal. That is, where a defendant fails to raise an issue in his criminal proceedings, that issue is procedurally barred from consideration in § 2255 proceedings. See United States v. Lopez, 248 F.3d 427, 433 (5th Cir. 2001); United States v. Kallestad, 236 F.3d 225, 227 (5th Cir. 2000). A district court may consider a defaulted claim only if the petitioner can demonstrate either (1) cause for his default and actual prejudice; or (2) that he is actually innocent of the crime charged. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Jones, 172 F.3d 381, 384 (5th Cir. 1999).

Aguirre-Pineda repeatedly asserts that the claims were not raised because his counsel was ineffective. An ineffective assistance of counsel claim is properly asserted for the first time in § 2255 proceedings because it raises an issue of constitutional magnitude and generally cannot be raised on direct appeal. United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002); United States v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992). Thus, to the extent Aguirre-Pineda's claims are ineffective assistance claims, the Court will address them.

As to claims that are not ineffective assistance claims and that Aguirre-Pineda did not raise on direct appeal, the Court concludes that those claims are procedurally defaulted. Thus, this Court can consider the claim only if Aguirre-Pineda can demonstrate actual innocence or cause and prejudice. Aguirre-Pineda repeatedly claims that the reason those issues were not raised on appeal was because his counsel failed to raise them. While an attorney's failure to raise a meritorious

argument on appeal can establish "cause," no prejudice can be shown here because Aguirre-Pineda's claims are meritless as discussed herein.

**C.     Ineffective Assistance of Counsel Claims**

   **1.     General Standards**

Aguirre-Pineda's ineffective assistance claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). Aguirre-Pineda's claims all focus on counsel's failures at sentencing. To establish prejudice as a result of alleged errors at sentencing, a § 2255 movant must show that there is a reasonable probability that, but for counsel's alleged errors, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004).

If the movant fails to either the deficiency or prejudice prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

As noted, Aguirre-Pineda argues that counsel should have challenged the sixteen-level enhancement as improper, should have asked for a reduced sentence under Booker based on Aguirre-Pineda's status as a deportable alien, because that status constitutes a "mitigating circumstance," and should have conducted additional unspecified investigation. None of his claims entitle him to relief.

**2.   Counsel's Alleged Failure to Properly Challenge the Sixteen-Level Adjustment**

As to Aguirre-Pineda's claim that counsel erred in failing to raise additional objections to his 16-level adjustment, the Court finds no error.  In fact, counsel objected to the enhancement as best he could, but there was basically no basis for any objection, because the adjustment to his offense level was proper.

Indeed, the Court has reviewed the PSR and finds no error in the calculation of Aguirre-Pineda's offense level.  His base offense level under 8 U.S.C. § 1326(a) and U.S.S.G. § 2L1.2 was properly determined to be an 8.  (See PSR at ¶ 10.)  His offense level was increased by 16 levels because he had previously been deported after a conviction for a felony for an alien smuggling offense, pursuant to U.S.S.G. ¶ 2L1.2(b)(1)(A).  (PSR at ¶ 11, 24.)  Aguirre-Pineda did not deny at sentencing – and does not deny now – that he was in fact convicted of Harboring Certain Aliens in violation of § 1324(a)(1)(A).  Moreover, the Court had before it the judgment for the Harboring Certain Aliens offense.  (See D.E. 22.) This charge for harboring illegal aliens clearly qualifies as an "alien smuggling offense." See U.S.S.G. § 2L1.2, Appl. Note 1(B) (defining an "alien smuggling offense" by reference to 8 U.S.C. § 1101(a)(43)(N)); 8 U.S.C. § 1101(a)(43)(N) ("an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title").  Thus, the 16-level enhancement was proper.  See U.S.S.G. § 2L1.2(b)(1)(A)(vii) (a sixteen level increase is warranted

if the defendant previously was deported after an "alien smuggling defense"). Accordingly, no error has been shown in his offense level. Thus, even if his counsel had objected on the grounds Aguirre-Pineda now urges, it would not have changed the outcome of sentencing. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Aguirre-Pineda simply has not established that he was denied effective assistance of counsel as a result of counsel's alleged failure to challenge his offense level.

### 3. Counsel's Alleged Failure to Raise Aguirre-Pineda's Status As A Deportable Alien as a Mitigating Factor

As to his claim that counsel was ineffective for failing to ask for or obtain a lesser sentence based on Aguirre-Pineda's status as a deportable alien, Aguirre-Pineda cannot establish prejudice, so the claim fails. Notably, even if counsel had asked at sentencing for a downward departure or reduced sentence due to Aguirre-Pineda's status as a deportable alien or asked the Court consider that status as a "mitigating circumstance," it would not have been granted.

The sentencing guidelines provide that a downward departure on the ground that the defendant is a deportable alien, while permissible, would be proper only in the extraordinary case, and such cases are considered "highly infrequent." See United States v. Garay, 235 F.3d 230, 232-33 & n.8 (5th Cir. 2000). Moreover, in an immigration offense, a defendant's alienage has been adequately taken into consideration and thus is not a permissible basis for downward departure. Garay, 235 F.3d at 233-34 (defendant's "status as deportable alien, as an inherent element of his crime, has already been considered by the [Sentencing] Commission in formulating the applicable guidelines"); United States v. Foote, 2001 WL 671465, *3-*4 (N.D. Tex. 2001) (rejecting argument

by § 2255 movant that his counsel should have moved for downward departure); cf. United States v. Maldonado, 242 F.3d 1, 4-5 (1st Cir. 2001) ("a deportable alien who commits a crime is still within the 'heartland' of the guidelines"; "the common facts of a long sentence and likely deportation" do not by themselves make a case extraordinary such as to warrant a downward departure).

While the cases cited in the preceding paragraph were all decided in a pre-Booker[3] world in which the sentencing guidelines were mandatory, the same principles hold true under the advisory guidelines, as well. That is, the Court was aware of Aguirre-Pineda's deportation status, and what that status meant in terms of the BOP's policies and restrictions. Further, the fact that Aguirre-Pineda is an illegal alien and subject to deportation is a fact already taken into account by the advisory sentencing guidelines for his offense. Thus, the Court would not imposed a lesser sentence had counsel raised an objection on this ground at sentencing.

Because Aguirre-Pineda has not shown a "reasonable probability" that he would have received a lesser sentence had counsel made that objection, he cannot establish prejudice. See United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). Accordingly, Aguirre-Pineda's ineffective assistance of counsel claim fails.

To the extent Aguirre-Pineda is making a direct challenge to the BOP's policies rendering him ineligible for certain programs or benefits, such a claim also fails. As an initial matter, the determination as to whether an inmate is eligible for participation in the BOP's drug treatment program and any resulting reduction in sentence are wholly within the discretion of the BOP, and are not the decision of the sentencing Court. See 18 U.S.C. § 3621(e)(2)(B) ("The period a prisoner

---

[3] United States v. Booker, 543 U.S. 220 (2005).

convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced *by the Bureau of Prisons*, but such reduction may not be more than one year from the term the prisoner must otherwise serve") (emphasis added).  As the Supreme Court has said, § 3621(e)(2)(B) grants the *Bureau of Prisons* the discretion to determine which inmates receive the benefit of early release.  Lopez v. Davis, 531 U.S. 230 (2001).  Similarly, it is the BOP that decides where to place inmates and whether placement in a halfway house is appropriate for any inmate.

Significantly, moreover, the BOP's policies on the precise issues of the drug treatment program and community-based placement being unavailable to INS detainees or deportable aliens have withstood equal protection challenges raised in other courts.  See 28 C.F.R. § 550.58; see, e.g., McLean v. Crabtree, 173 F.3d 1176, 118-85 (9th Cir. 1999) (BOP's rule prohibiting prisoners with INS detainers from receiving sentence reduction under substance abuse treatment statute does not violate due process or equal protection).  Indeed, in several unpublished decisions, the Fifth Circuit has rejected equal protection claims to the BOP's treatment of non-citizens.  See, e.g., Perez-Martinez v. United States, 235 Fed. Appx. 228, 229, 2007 WL 2114403 (5th Cir. July 23, 2007) (unpublished) (affirming district court's dismissal of equal protection claim in § 2241 petition because petitioner did not show he was being treated differently than similarly situated persons or that the restrictions on INS detainees' participation in the drug-treatment program are irrational, since they are based on a valid flight risk); Bazuaye v. Tombone, 275 F.3d 44, 2001 WL 1223857 (5th Cir. Oct. 5, 2001) (unpublished) (rejecting equal protection claims and due process claims of INS detainee who was ineligible for sentence reduction for drug treatment and ineligible for community-based placement).

### 4. Counsel's Alleged Failure to Investigate

As noted, Aguirre-Pineda also makes the conclusory claim, without supporting detail, that counsel failed to investigate his case and violated unspecified ABA standards. He does not provide any specific information, however, as to what counsel should have investigated or what his additional investigation would have revealed. His claim fails on this ground alone. United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Moreover, there is no presumption of prejudice based on a failure to investigate. Woodard v. Collins, 898 F.2d 1027, 1029 (5th Cir. 1990).

Similarly, he has not identified what "standards" he believes counsel violated or how it prejudiced him. Because Aguirre-Pineda has not raised any specific facts that would show prejudice as a result of these alleged failures by counsel, this claim fails. Cf. United States v. Pineda, 988 F.2d 22, 23 (5th Cir. 1993) ("Mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue.") (citation omitted).

For the foregoing reasons, Aguirre-Pineda's claims do not entitle him to relief. Accordingly, his motion pursuant to 28 U.S.C. § 2255 is DENIED.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Aguirre-Pineda has not yet filed a notice of appeal, the § 2255 Rules instruct that this Court "must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant." Rule 11, § 2255 Rules.  The Court thus turns to whether Aguirre-Pineda is entitled to a COA.

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Aguirre-Pineda is not entitled to a COA as to any of his claims.  That is, reasonable jurists could not debate the Court's resolution of any of his claims.

## V. CONCLUSION

For the aforementioned reasons, Aguirre-Pineda's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 47) is DENIED. Additionally, Aguirre-Pineda is DENIED a Certificate of Appealability.

It is so ORDERED this 14th day of June, 2010.

_____
Janis Graham Jack
United States District Judge